# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# BOWLING GREEN DIVISION
# CASE NO.: 1:11-CV-00016-R

**UNLIMITED MARINE, INC.**                                                    **PLAINTIFF**

**v.**

**EMPIRE INDEMNITY INSURANCE CO., et al.,**                  **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Plaintiff's Motion for the Court to abstain from exercising jurisdiction (DN 12). Defendants have responded (DN 13) and Plaintiff has replied (DN 14). This motion is now ripe for adjudication. For the reasons that follow, Plaintiff's motion is DENIED.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Unlimited Marine, Inc. ("UM") is a marine retail business in Russell County, Kentucky, that sells a variety of sporting and recreational water craft. In the winter of 2010, UM was approached by Vince Trotter of Auction Connection, LLC in Murfreesboro, Tennessee, to consign nine motorboats, one recreational vehicle, and a separate outboard motor for an auction sale in Murfreesboro. UM submitted the requested inventory only under the express agreement that Trotter would abide by preestablished minimum prices for each item. The auction was held on February 18 and 19, 2010. Without UM's knowledge, Trotter sold the motorboats and the vehicle for well below the reserve prices, causing losses to UM of roughly $132,000.

In the months following, UM made efforts to recover its inventory by initiating legal proceedings in Tennessee, Georgia, and Oklahoma against Trotter and several of the purchasers at the auction. UM claims that this process was complicated by the fact that a number of purchasers at the auction were themselves retailers of marine vehicles who quickly passed the

items on to new, unsuspecting buyers. According to the current motion, legal action continues in the circuit court in Murfreesboro, Tennessee, where UM is attempting to collect some $32,000 deposited with the court, proceeds of Trotter's fraudulent sales. All told, UM claims that it has spent in excess of $100,000 in legal fees attempting to recover its property.

During and prior to these events, UM had insurance coverage with Defendants Empire Indemnity Insurance Company and Zurich American Insurance Company (collectively "Defendants"). The policy provides UM with false pretense coverage through an endorsement ("Endorsement"), which covered losses for thefts by deception up to $10,000. DN 1-1 at 7-8. The Endorsement excludes coverage unless UM "make[s] every effort to recover the Covered Property when it is located." *Id*. at 8.

In June of 2010, Defendants paid UM the full $10,000 by check as provided for under the Endorsement. UM returned the check, informed Defendants of the recovery efforts it had undertaken, and asked Defendants to recalculate the amount it was due. Defendants resubmitted a payment on December 7, 2010, excluding however any reimbursement for UM's expenses in attempting to recover its inventory. Following a request by UM to again determine if it was entitled to reimbursement for the efforts it made to recover the property, Defendants decided on December 30, 2010, that the policy did not cover these expenses and refused payment.

On January 3, 2011, UM filed a declaratory judgment action against Defendants under KRS § 418, *et*. *seq*., in the circuit court of Russell County, Kentucky. In it, UM requested that the court "declare that the [Defendants] must reimburse [it] for all expenses incurred while complying with the endorsement's 'every effort' requirement." DN 1-1 at 5. It also asked the Court to find that the actions it had undertaken to date met the requirements of the "every effort"

clause in the Endorsement. *Id*. On January 28, Defendants removed this action pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. DN 1. This motion to abstain has followed.

**STANDARD**

Diversity jurisdiction requires that the amount in controversy exceed seventy-five thousand dollars and be between "citizens of different states." 28 U.S.C. §1332(a)(1). When an action is removed on the basis of diversity, a court must determine whether "'all parties on one side of the litigation are of a different citizenship from all parties on the other side of the litigation.'" *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 492 (6th Cir. 1999) (citation omitted). The citizenship of a corporation is defined in the jurisdiction statute as "any State by which [the corporation] has been incorporated and the state where [the corporation] has its principal place of business." 28 U.S.C. §1332(c)(1).

The Declaratory Judgment Act ("Act") states that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, . . . may declare the rights and other legal relations of any interested party seeking such declaration. . . . Any such declaration shall have the force and effect of a final judgment . . . and shall be reviewable as such." 28 U.S.C. §2201(a). The Act is an enabling act, which extends the jurisdiction of the court beyond the jurisdictional basis initially required. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995). While this Act authorizes district courts to exercise jurisdiction, it does not mandate or impose a duty to do so. *Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 812 (6th Cir. 2004); *Allstate Ins. Co. v. Mercier*, 913 F.2d 273, 276 (6th Cir. 1990), *abrogated on other grounds by Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995). The Act confers on the "federal courts unique and substantial discretion in deciding whether to declare the rights of litigants."

3

*Wilton*, 515 U.S. at 286. A district court may not decline jurisdiction, however, as a matter of whim or personal disinclination. *Mercier,* 913 F.2d at 277.

In determining whether the exercise of jurisdiction is proper, the Court must consider five factors:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata;' (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Grand Trunk W. R. R. Co. v. Consol. Rail Co.*, 746 F.2d 323, 326 (6th Cir. 1984). In the determination of factor number four, three additional factors are considered:

> (1) whether the underlying factual issues are important to an informed resolution of the case; (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and (3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common law or statutory law dictates a resolution of the declaratory judgment action.

*Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000).

## DISCUSSION

As an initial matter, the Declaratory Judgment Act only extends the jurisdiction of a federal court; subject matter jurisdiction must first be proper under 28 U.S.C. §1331, Federal Question, or §1332, Diversity of Citizenship. This action was brought based on diversity of citizenship: Plaintiff is a citizen of Kentucky while and Defendants are citizens of Oklahoma, Illinois, and New York. Diversity jurisdiction in this case is proper.

Continuing on, UM urges this Court to decline jurisdiction because the "case presents important questions of public policy and insurance contract law." DN 12-1 at 5. UM argues that

three novel insurance questions compel the Court to abstain: (1) "whether the insurance policy mandate to 'make every effort' is ambiguous"; (2) "whether the common law should require an insurer to reimburse the cost of recovering stolen property, since recovery benefits the insurer"; and (3) "does requiring [UM] to battle for the return of stolen property violate insurance statutes and public policy?" *Id.* at 10. UM charges that since insurance law falls strictly under the purview of Kentucky courts, it would be imprudent for this Court to rule on these issues of first impression. Defendants respond that this case does not involve any issues of first impression under Kentucky law; instead, they characterize it as a simple dispute over the language of the Endorsement that does not have any far-reaching legal implications.

In order to determine whether the Court should decline to exercise jurisdiction, the Court must look at the five *Grand Trunk* factors. Each is addressed in turn below.

**I. Settlement of the Controversy**

Under this factor, a court must determine whether issuing a declaratory judgment would settle the controversy. In *Secura Ins. Co. v. Gray Constr., Inc.*, 661 F. Supp. 2d 721 (W.D. Ky. 2009), this Court analyzed a number of recent decisions handed down by the Sixth Circuit interpreting this factor:

> The Sixth Circuit issued an opinion in *Scottsdale Ins. Co. v. Flowers*, "to clarify our precedent regarding the discretionary exercise of the jurisdiction granted by the Declaratory Judgment Act." 513 F.3d 546, 554 (6th Cir. 2008). While this opinion did not overrule prior opinions on this topic, it has become the standard in this circuit and has expressly set forth the tests to be used by district courts making this determination.
>     First, the Court must determine whether the declaratory action would settle the controversy. As explained by the Sixth Circuit in *Flowers*, there are two lines of precedent regarding the first factor. 513 F.3d at 555. "One set of cases has concluded that a declaratory relief action can settle the insurance coverage controversy not being addressed in state court, even though it will not help resolve the underlying state court action." *Id.* However, another set of cases "has found

5

> that, while such declaratory actions might clarify the legal relationship between the insurer and the insured, they do not settle the ultimate controversy between the parties which is ongoing in state court." *Id*. The Sixth Circuit examined these cases and explained that the differences between the two lines of precedent were the different factual scenarios presented. *Id*. In *Bituminous*, the court was faced with an action in which determination of the insurance coverage issue rested on a fact-based question of state law which was already being considered in two other state court proceedings. *Id*. at 555-56 (citing *Bituminous Casualty Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 813-14 (6th Cir. 2004)). In *Northland*, however, the insurer was not a party to the state court action so that "neither the scope of the insurance coverage nor the obligation to defend was before the state court." *Id*. at 556 (citing *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003)). In *Flowers*, the court concluded that the issue addressed was not before the state court as in *Northland* and there was not a disputed issue of fact that was being addressed by the state court as in *Bituminous*. *Id*. For these reasons, the court held that the district court's declaratory judgment did settle the controversy between the parties. *Id*.

*Id*. at 726 (citations altered).

As an initial point, neither party disputes that this *Grand Trunk* factor cuts toward the Court retaining jurisdiction, as a ruling on this issue would resolve the dispute over whether the expenses incurred by UM are covered under the Endorsement. After its own analysis, the Court finds that the facts in the case at bar are more in line with those of *Northland* rather than *Bituminous*. Currently, the only proceeding taking place in state court in which either UM or Defendants are a party is the action pending before the circuit court in Murfreesboro. UM has described this action in its own motions as one that seeks to recoup the auction proceeds; consequently the subject matter of this case is divorced from both the present declaratory judgment action and the provisions of the Endorsement. That Defendants are not parties to this litigation further counsels that this factor favors the Court retaining jurisdiction. *See Northland*, 327 F.3d at 454 (as insurance company was not a party to the state court litigation, coverage issue not under consideration). In *Bituminous*, there were several different state court actions,

any of which would have impacted the results in the federal court, and vice versa. *Bituminous*, 373 F.3d at 813-14. Conversely, while a decision here will only settle the instant case rather than the controversy taking place in Tennessee's state court, this is only because the two lawsuits are almost entirely unrelated. The adjudication of one will in no way affect the outcome of the other; this lack of interconnectedness plainly illustrates that this Court's ruling will settle the issue.

What is more, there are no facts that need be developed in the Murfreesboro's court, as the three issues pinpointed by UM are strictly legal ones. Under Kentucky law, "as a general rule, the construction and legal effect of an insurance contract is a matter of law for the court." *Bituminous Cas. Corp. v. Kenway Contracting, Inc.*, 240 S.W.3d 633, 638 (Ky. 2007) (citing *Morganfield Nat'l Bank v. Damien Elder & Sons*, 836 S.W.2d 893, 895 (Ky. 1992)). As the three "issues" cited by UM revolve around the Endorsement's ambiguity and potential coverage, these are legal queries, and therefore no factual development is necessary to confront them. Indeed, while UM states repeatedly in its motion that important facts must be fleshed out in the state court, not once does it describe what facts those might be.

When considering these conclusions, and that both parties agree a ruling on this issue would resolve the dispute, the Court finds that this first factor favors retaining jurisdiction.

**II. Clarification of the Legal Relations at Issue**

Again, quoting language from *Secura*, this Court has described the next factor as follows:

[T]he Court must [next] determine [] whether the declaratory judgment will clarify the legal relations at issue. This second factor "is closely related to the first factor and is often considered in connection with it. . . . Indeed, it is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue." *Flowers*, 513 F.3d at 557. [. . .] In *Flowers*, the Sixth Circuit adopted the precedent holding that the judgment of the district court need

7

only clarify the legal relations presented in the declaratory judgment action. *Id*. *Secura*, 661 F. Supp. 2d at 727-28.

All parties concede, and this Court agrees, that this factor points toward the Court keeping jurisdiction. As previously explored, the questions before the Court are legal in nature and there is no need for factual development in another forum. Moreover, the issues that demand review will undoubtedly clarify the "legal relations presented in the declaratory action." *Id*. Once the Court rules on the present coverage issues before it, the relationship between UM and Defendants will be clear once and for all. In addition, this decision will not prejudice (or even impact) the proceeding before the court in Murfreesboro, as each involves questions of law that are wholly unrelated. Accordingly, this factor also counsels retaining jurisdiction.

**III. Race for Res Judicata**

"The third factor to consider is whether the use of the declaratory judgment action is motivated by 'procedural fencing' or likely to create a race for res judicata." *Flowers*, 513 F.3d at 558. It "is meant to preclude jurisdiction for 'declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable forum.'" *Id*. (quoting *AmSouth Bank v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004)). The real inquiry is if the plaintiff filing for declaratory judgment did so first to specifically choose the forum of the suit. *Id*.

As with the first two factors, UM agrees that this factor is either neutral or leans toward the Court exercising jurisdiction, since it is clear no forum shopping has occurred. DN 12-1 at 12. The record shows that the two legal actions were filed in separate states, are founded upon differing legal theories, and were instituted nearly a year apart. These facts illustrate that neither

8

party has pursued this action in an attempt to create a race to judgment. *See id.* (finding that the length of time filed between two actions is indicative at to whether the third factor is met). Considering that Defendants have "done [nothing] more than choose the jurisdiction of federal rather than state court[,]" *State Farm Fire and Cas. Co. v. Odom*, 799 F.2d 247, 250 n. 1 (6th Cir. 1986), the removal of this action to this Court could not have been motivated by procedural posturing. The Court believes that the instant matter was not pursued to create a race for res judicata or for procedural fencing purposes, and thus exercising jurisdiction over it is proper.

### IV. Increased Friction between Federal and State Courts

The fourth factor revolves around whether taking jurisdiction over a matter would incite friction amongst federal and state courts. In *Flowers*, the Sixth Circuit had this to say about the factor:

> The Supreme Court has cautioned that "where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in '[g]ratuitous interference,' if it permitted the federal declaratory action to proceed." *Wilton*, 515 U.S. at 283 (quoting *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942)). However, "the mere existence of a state court proceeding is not determinative of improper federal encroachment upon state jurisdiction." *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1067 (6th Cir. 1987). Thus, to determine whether the exercise of jurisdiction would increase friction between federal and state courts, we consider three additional sub-factors:
> (1) whether the underlying factual issues are important to an informed resolution of the case;
> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
> (3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Flowers*, 513 F.3d at 559-60 (citation omitted and formatting altered).

When considering UM's motion and the Court's previous conclusions, it would appear

9

that the debate centers on the third sub-factor: the nexus between facts and other issues of state law and public policy. It is plainly evident that the first two of these sub-factors point to the Court maintaining jurisdiction, as there are no factual issues before the Murfreesboro court that impact whether or not UM's recovery expenses are covered by the Endorsement. Rather, the coverage questions in the present matter deal with insurance contract interpretation, a legal query. As such, the factual development in the state court is nearly irrelevant. The case law interpreting the second sub-factor is even more supportive of the decision to maintain jurisdiction. In addressing new questions under Kentucky law, "a district court should [not] always turn away a declaratory judgment action when an undetermined question of state law is presented." *Id*. at 560 (quoting *Roumph*, 211 F.3d at 969). Where the state court is not considering novel legal questions or where the insurance company is not a party to the state court action, "'a decision by the district court on these issues would not offend principles of comity.'" *Id*. (quoting *Northland*, 327 F.3d at 454). This language demonstrates that the second sub-factor pushes the Court to retain jurisdiction as well: the Murfreesboro court will not address issues of Kentucky law since it is applying Tennessee law and Defendants are not parties to the action. Ergo, the first two of these sub-factors lay out that the Court's jurisdiction should be unaffected.

Regarding the state law and policy argument, UM insists that a Kentucky state court is the appropriate forum because the three novel insurance questions addressed earlier, *see supra* Discussion, all implicate important state law issues. DN 12-1 at 10. In so stating, UM points to at least one arguably analogous decision that says "insurance contract interpretation are questions of state law with which the Kentucky state courts are more familiar and, therefore, better able to resolve." *Travelers Indem. Co. v. Bowling Green Professional Associates, PLC*,

495 F.3d 266, 273 (6th Cir. 2007). Defendants disagree with this characterization, noting that the only inquiry before the Court is whether an insurance contract allows the reimbursement of attorneys' fees, an issue that has already been confronted by a number of Kentucky and federal courts. As such, Defendants say that the questions raised do not touch upon the policy issues about which UM professes to worry.

Here, as in its previous decision of *Secura*, the Court concludes that UM's "claim is not a novel question of state law, but merely contract interpretation." *Secura*, 661 F. Supp. 2d at 730. Kentucky law is rife with decisions interpreting insurance contracts and the Court has little doubt that they will provide either direct or persuasive precedent when making its ruling. Even assuming that this case involves novel state law, only one of these sub-factors favors abstention from hearing the matter; as a result, the Court does not "find that this fourth . . . factor clearly indicates that . . . refusal to decline jurisdiction [is] improper in this case." *See Flowers*, 513 F.3d at 561 (finding that even though final sub-factor counseled against exercising jurisdiction, this was not dispositive on the overall decision).

**V. Availability of Alternative Remedy**

The last factor is whether other remedies are available to the litigants. "A district court should 'deny declaratory relief if an alternative remedy is better or more effective.'" *Id*. at 562 (quoting *Grand Trunk*, 746 F.2d at 326). "[A]s to whether remand to state court would constitute a 'better' and 'more effective' alternative under the fifth factor, 'there is no reason to suppose that the alternate remedies available in state court would not adequately protect Defendant's interests.'" *Jordan Ice Co., Inc. v. Grange Mut. Cas. Co.*, No. 06-cv-142, 2006 WL 3497767, at*5 (E.D. Ky. Dec. 4, 2006) (quoting *Bituminous*, 373 F.3d at 816). An inquiry of

this factor "must be fact specific, involving consideration of the whole package of options available to the federal declaratory plaintiff." *Flowers*, 513 F.3d at 562.

UM suggests that having the circuit court of Russell County decide the declaratory action under KRS § 418.040 in lieu of this Court is superior simply because, as a general matter, Kentucky Courts are best situated to construe and apply the state law surrounding insurance regulation. DN 12-1 at 13. Although this contention is indeed supported by prior precedent, UM has not sufficiently illustrated to the Court that the instant action confronts a legal question without an answer under Kentucky law. Rather, UM seemingly asks Defendants and this Court to take its word that the "make every effort" clause in the Endorsement is one that has been subject to endless judicial debate and hand-wringing in other jurisdictions. Still, since the matter targets the ambiguity of an insurance contract, it would be preferable to have a state rather than a federal court render a decision construing Kentucky law. Consequently, this factor pushes the Court to abstain from exercising its jurisdiction.

**VI. Balancing of the Factors**

Exactly how the above-described factors should be weighed by a court has never been precisely decided by the Sixth Circuit. *Flowers*, 513 F.3d at 563. Nevertheless, the final tally indicates that four of the five factors point toward retaining jurisdiction, while the fifth counsels abstention. Though UM argues that the latter two factors are the most important, it can offer no binding authority that this is the proper analysis. Instead, in determining that retention of this matter is proper, the Court relies on the following conclusions, discussed in the first, second, and fourth factors: (1) the corresponding state court action does not include the Defendants or the coverage issue presently before the Court; (2) no factual development is needed to consider the

issues in the case; (3) any decision by the Court is unlikely to cause friction between state law and a federal court ruling. With these determinations, and after looking at the factors as a whole, the Court finds that exercising jurisdiction over this matter is appropriate.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that the Plaintiff Unlimited Marine, Inc.'s Motion for the Court to Abstain is DENIED.